This case of the afternoon 415-0044, Enraged and Marriage of Weddigen, and for the appellant, Ms. Mayo, for the appellee, Mr. Scott, you may proceed. May I please report, counsel? Your Honors, we're here today on the issue of whether or not the trial court erred in holding my client, Mr. Jim Weddigen, in contempt of court for statements that he made on Facebook. I'd like to start by pointing out to the court and reminding the court of what this case is and is not about. This case is about whether or not my client committed contemptuous conduct by making statements on Facebook. It is not about Illinois Supreme Court Rule 63. It is not about whether or not my client recorded any statements. It's simply about whether or not my client should be held in contempt of court for posting on Facebook. Your Honors, I submit to the court that this is a pretty obvious and straightforward case. To begin with, this is a proceeding for indirect civil contempt. I'd ask, Your Honors, first to direct your attention to the original amended petition filed by the appellee, Ms. Weddigen, in this case. Nowhere in her amended petition does she ever allege anything, any wrongdoing on my client's part, simply based on the fact that he posted statements on Facebook. The only claim that she made against my client was that he recorded an in-court proceeding. That's the only claim she made against my client. In October, Judge Narduli specifically found that my client never recorded any proceeding. At that point, Your Honors, Ms. Weddigen's case should have been dismissed. At that point, she had failed to meet her initial burden that my client had in some way violated a court order, which brings me to my second point. There was never any court order. There was never any court order ordering my client not to post on Facebook. And in fact, I submit to Your Honors, it would have been contrary to the law of this country had there been. If Judge Narduli had ever entered an order and said, Jim Weddigen, you may not post statements on Facebook, Your Honors, I guarantee you we would have been here a lot sooner than we were. Because it's simply not, you can't do it. It's the First Amendment. It's that easy. That's the second problem. So in order for the court to have found my client in contempt, there must have been an order that he violated. There was no order. Secondly, he must have been disobedient to that order. If there's no order, there's no way for my client to ever be disobedient to the order because there's no order telling him he could or couldn't do something. Those are the initial problems with the courts holding my client in contempt. What if he ran out of the courtroom and in the corridor of the courtroom, either within or without the hearing of the trial judge, direct, indirect, etc., began making spurious accusations against the court or court personnel or stating his opinions? Next time I'm going to come in and pretend to be an attorney, maybe I'll get better treatment. Could he, by making those statements, that would not be violative of any court order or violative of any law, could they possibly be contemptuous? I think it's a factual determination. Well, then it's possible that something he posted on Facebook could be. If it's a factual determination, does it have anything to do with an order or a law? I think it does, Judge. I think the difference of the situation that you're talking about where my client would be in the courthouse yelling these things in the courthouse is far different than being on an online forum and posting. This is what I think the law is and this is what I think you should do and this is my opinion. How is it different? It's my opinion that if you walk in through these doors, you will get screwed. If you walk in through these doors, beware. All you who enter here. Begin saying that would dis... And I'm not saying that he's saying it so loudly or it's raucous that he's disrupting the... I understand what you're saying. You know, it's a disorderly conduct, but nonetheless, it's an advocacy that bad things are going to happen. My opinion is bad things are going to happen if you walk through those doors because bad things happen to me and that judges occur. I think that what your Honor is getting to is what the judge could never have found in this case. There's something imminent about that. If my client walks out the courtroom doors and starts saying that you can't get a fair hearing in there, forget about that judge... You don't think it's imminent that you advocate for recording things and posing as an attorney when you're not in order to evade security? No, sir, not... Maybe I'm misunderstanding your question, but... Well, it's not imminent in the sense that it's going to happen within the next five or ten seconds, but it's... It's not even imminent in that you can never show that anybody relied on it to do anything. I mean, it's a posting on Facebook. Nobody would rely on Facebook for anything. It's a posting on Facebook, yes. So there's that issue. The other issue continues to be procedural, Your Honors. So, Ms. Wettigin never could have proven her petition because the trial court found, specifically found, that my client had not made any recordings. The trial court then goes on to say, but that's not the end of the story, Mr. Wettigin, because I think you've done something contemptuous, so I'm going to hold you in contempt. He initially did hold my client in contempt in October and reversed, vacated that portion of his order and allowed my client to at least have notice and a hearing on that issue. But the trial court continues to assert that this is somehow related to Ms. Wettigin's petition, and Your Honors, it isn't. That's not what she alleges anywhere in her petition. Her petition says he recorded this hearing and he shouldn't have recorded it. That's all her petition says. What the trial court holds my client in contempt for is for posting some statements on Facebook, and that is a wholly different issue. So the trial court holds my client in contempt for something he never should have held him in contempt for, and then goes a step further and awards Ms. Wettigin her attorney's fees for a petition for contempt that she never filed. Her petition should have been dismissed in October when the judge made the finding that my client didn't make any recordings, because that's the only thing she ever alleged in her petition. So we've got two issues. We've got the issue of the judge finding my client to be in contempt for something he never could have been in contempt for, and we've got the issue of the trial court awarding Ms. Wettigin attorney's fees for a petition that she actually never even filed. This was on the trial court's own motion. This was the trial court's own decision that it decided it didn't like my client's statements. It didn't like what my client said on Facebook, and therefore, he was going to hold my client in contempt. Let me aside the contempt for a moment. What's the problem with the trial court's decision to make your client pay attorney fees with regard to his failure to make child support payments that the court found was proof? It is our position, Your Honor, that it's against the manifest weight of the evidence that it was reasonable for Ms. Wettigin to have to file this petition for rule to show cause. She wasn't being paid, was she? That's true, Your Honor, and we admit that in the hearing. But first of all, as Your Honor can see from the docket itself, Ms. Wettigin filed this motion four days before the hearing when we were supposed to show up, two days after I'd entered my appearance. I moved to continue at that time. The trial court denied my motion to continue. My client got on the stand. Yes, I didn't realize I was supposed to pay. If I'm supposed to pay, obviously I will. The court in its findings said he hadn't done anything contemptuous or willful. But the more important point is... It was in violation of the court order. The more important point is... And why does it matter when you appeared or when she filed it? The trial judge says you're in violation of the court order and you know justification to be in violation of the court order. Pay up. That's where I'm getting to, Your Honor. They had filed notices of withholding before. They had filed amended notices of withholding before. There was a notice of withholding right now. All they had to do is file another amended notice of withholding. And my client never would have been behind. They had an absolute right to file that notice of withholding, and they never did it. I don't understand what you mean. When you're talking about amended notices of withholding, what is that? For his income from his employer, yes, sir. So they could have filed an amended notice of withholding of income from his employer as they had done in the past, and his employer would have automatically sent Ms. Wedigan the correct amount of child support. Was there a court order directing your client to pay? There was. Yes, there's no denying that. Was there a requirement that the petitioner do anything to take steps to make sure he pays? Not that I'm aware of, Your Honor, but that's not the issue. Well, it seems to me that the issue is if you're saying they were required to do this before he's required to pay, and I don't understand where that requirement comes from. I don't think that's exactly what I'm saying, Your Honor. What I'm saying is the judge found that it was not unreasonable for Ms. Wedigan to have to file this petition, and what I'm saying is that's not true, Your Honor, because she has filed notices of withholding before. She knows where he works. That hasn't changed. She could have easily filed an amended notice of withholding and saved everybody the money. Perhaps, but it wasn't required. Not that I'm aware of, Your Honor. Well, if you're not aware of it, then I don't think we or the trial court would be, and the question is if he's under a court order to pay, he should pay. My client agreed. My client agreed. And if he didn't, then we have a hearing to make him pay, and he should pay for the cost of that hearing. Well, that was another part of our position is that a hearing wasn't necessary. I never even had a chance. Here's when the hearing isn't necessary, counsel. Your client is paid. I understand, Your Honor. And short of that, you're talking about, well, they could have done this. They could have called him up. I handled these cases for 10 years as a trial judge. I think I've heard all of the excuses you want to hear. I understand, Your Honor. If you don't pay, you don't pay, and you're going to pay for the cost of having an attorney brought in. I still don't understand what the issue is here. I understand, Your Honor. It's just our position is that it was unreasonable. I understand, Your Honor. Okay. I believe that given the facts of this case and given the procedural posture and given the history of this case, in light of the fact that she filed amended notices of withholding before, it was unreasonable for her the last minute, four days before the hearing, to file this new petition for rule to show cause for the judge to not give us an opportunity, for the judge to not give me an opportunity to discuss it with my client or with counsel, and then decide, well, and now you're going to pay the attorney's fees and costs associated with this hearing, that you were only given four days notice for. That's our position with respect to that, Your Honor. If I don't have anything further, I would ask to reserve rebuttal. If Your Honors have any other questions. Thank you. Mr. Scott. May it please the Court. First of all, I disagree with counters to disregard the Supreme Court rule. So it was before the court. I think the difference between counsel and myself is that I believe that our courts have the right to protect their courts, to protect themselves, to protect the integrity of the courts. People versus goss. So this is an assault on the court's integrity? I believe so. And we have no other way to protect our integrity than to restrict free speech and issue orders like this, Mr. Scott? You know, I'm not familiar with the same in county courthouse, but in Champaign County we have this sign that says electronic devices and cell phones not permitted. Anything that might videotape. Would that do the job? And then we have guards there checking. Well, it's supposed to do the job, but apparently if you're like Mr. Wedigan, you can misrepresent yourself as an attorney, which in most of these counties that have those types of postings, they allow attorneys to bring them in because they usually keep their count. They don't have to do that, though, do they? No, they don't. They could check everybody, couldn't they? That would be one way of stopping cell phones and other things that might make improper recordings, wouldn't it? It would. What about if Mr. Wedigan decided he wanted to walk down here on Monroe Street just below the governor's window with a sign that says Governor Rauner is corrupt and crooked and he's a liar and he's just concerned about his cronies and against the little people. Would that be okay? I believe he would have the right to say that. And if the state police said you better get out of here, what about that? That would be improper, wouldn't it? Well, it depends on whether he's breaching the peace. How about if he had the same sign walking up in front of you on Monroe Street instead of Governor Rauner? It's Judge Steigman's corrupt and crooked, and he's always ruling in favor of women and against men, and he should be thrown off the bench. Well, there's a couple cases that say that he has the right to say that. Is that in doubt? Pardon me? Is that in doubt? I don't believe so, no. Okay, so the answer would be he would have the right to say that? He would have the right to say that. What if we just had a hearing and I asked some tough questions of him, he didn't like it, and as he was walking out he said to our security guard, you know, Steigman's really corrupt and crooked and terrible, and he should be thrown off the bench. Would that be permitted? I think you come close, since you're in the courthouse, as to when you cross that line or not. Well, if you're creating a disturbance, what if he just mentions this in passing to the guard there? I'm trying to find where this bright line is, Mr. Scott. At what point we can tell people what they can no longer say and where? Well, from what I read of the case law, I believe that the line is if the action is calculated as a state to impede, embarrass, or obstruct the administration of justice, which is a determination that's made on the factual basis of each case. So in each of your examples, it would depend upon how close you are to the case, whether it's disrupting the courthouse, whether, like in Justice Connick's example, you're standing outside the courtroom and interfering with that. In this case, this person started out with basically a guidebook on how to disrupt the system. He starts out, he says, I recorded it, which he later denied, but then his next statement out of his mouth is, and I encourage you to do the same. And he can't say that? He cannot say that. Says who and why, Mr. Scott? Because he is inciting people to violate a Supreme Court rule. So there's a line, it's like... He's inciting people to violate a Supreme Court rule when they come to the courthouse and go through the speakers there, the Supreme Court rule being don't record in the courtroom? That's it? Well, no, I think he did more than that. What about true threats and how it's supposed to be a serious intent to commit an act of unlawful violence and how restraints on speech on the basis of its content, except in a few limited categories, are generally prohibited? Well, if you look at the Agostino, if I pronounce that right, case, they said that comments that are systematically designed to thwart the judicial process constitute the clear and present danger, which is what I think the court... What were the circumstances in the Agostino? Pardon me? What were the circumstances? I apologize, Your Honor. It just occurs to me, are we really such... Do we need the fainting couch here for the members of the judiciary? Are we really such tender buttercups that if we have a guy, some jerk on Facebook saying bad stuff, and by the way, you can't trust him, you're going to have to... We're now going to say not only that... And by the way, I've never heard of this before. Not only are you prohibited from saying this, and I understand we have some issues about restricting the speech, but now we have compelled speech. He's compelled by Judge Nardulli's order, you better go on Facebook and undo that and say you're sorry and all the rest of that. Where is the precedent for that, Mr. Scott? Well, the precedent for that is the cases that I cited to the court with regard to the statement Judge Nardulli said as being conduct... It's not conduct, goodness. Content, I apologize, content neutral. He's not saying to go on and make a political statement. He's not going on and saying that you have to go tell them that Justice Steigman is a good guy, that he's not crooked, or anything like that. What he's saying is you have to go on and tell them I was wrong, that you cannot record. What case in the United States jurisprudence supports the court ordering someone to make statements like this? Well, I think that that's, well, for one... Compelled speech. I don't believe it's compelled speech. Well, he says do it or you're in contempt. He says no, you're in contempt. Here's how you expunge it. And if you don't expunge it, there will be serious consequences. That sounds like compulsion to me, Mr. Scott. Well, but all he's doing is asking him to correct the error that he did. What case in American jurisprudence would support as a precedent for this order? I would think, and I'll cite you to the case that I believe it does, is I think that the court has the right to enforce its orders in in re marriage of bets, and I believe that People v. Goss, the Supreme Court case of the state of Illinois, says that the court has a right to enforce and protect its judicial process. So he is protecting the judicial process by telling people that wait a minute, Supreme Court Rule 63 prevents this. Our courts prevent this. What has happened is an individual gets on and gives a blueprint as to how to get around the court process and to circumvent the court process. So to protect the court process, our courts have the right to direct individuals to say to others, if you've done this, know I was wrong. And that's where I believe we do. Is there any court that has ever so held, any court order that you can cite or think of where any such thing ever happened? Compelled speech. I don't have a case for you. I'm not surprised that you don't, Mr. Scott. But here's the other thing. What about this concept? Since we're talking about freedom of speech, one of the fundamental freedoms under our Constitution, if it's to be restricted, how about the most narrowly tailored means necessary under the circumstances to do so? I came up with another means that might do the trick instead of telling people don't talk about this, and that is how about just search at the door? If they search at the door, who cares what Mr. Ruddigan says? I understand, Your Honor. Why wouldn't that succeed? Why wouldn't that have the same effect? It might in the future, but it's not going to correct what has been put out on the system. The system that Mr. Ruddigan chose to use is a social network system where he said, I'm encouraging you to violate a Supreme Court rule. Not only that, but this is how you do it, and this is what you use, and this is how you impersonate yourself as an officer of the court. And then he goes on and says, I don't care if this causes an issue with the court. So after the fact, if every court would adopt a policy, this court, like Justice Steigman is saying, yes, if we do this, we would exclude all recording devices in a court. That would, in fact, maybe work. Although I dare say there are creative enough people to get around that, and creative enough people. What if he said instead something even more serious than a Supreme Court rule against recordings, like we have a law that would pay income tax. What if he went on Facebook and said, federal government is corrupt. They're wasting our money. It's time for a middle class revolt. Don't pay your taxes. I'm not going to either. Are you going to be dragged off by the U.S. attorney into the who's go? He'd be running for president. That might be the case. I mean, I'm not sure where this line is from here. He's advocating a crime. He's advocating a felony. Yes, he is. Okay, is that, well, why is, first, two questions. One, is that subject to being arrested and prosecuted by the U.S. attorney? And two, if it isn't, why is this offense of putting on Facebook about violating the Supreme Court rule and recording in a courtroom subject to sanctions when the one about the income tax is not? Well, first of all, with the one with regard to the income tax, it may be the situation that he says it as to whether or not it would put him into a position. But he said exactly the same thing. He's on Facebook. I'm not going to do this anymore, you know, where he put it on social media. I don't want to, I want to make it clear we're in the same media, so there's no difference. Now what? I honestly don't think he would be charged with a federal crime. Well, did he commit a federal crime? Does this amount to, I mean, if we had a U.S. attorney bereft of judgment, could he under the cover of law say, hey, this guy is arguing, he's committing a felony. He's actively encouraging other people, all tens of the people on his Facebook page, to follow him and commit this felony, go out FBI and pick him up. He could. He could be, if there was a federal district attorney that chose to do that, how successful that would be, I do not know. I do not believe it would be actionable for criminal conduct. Do you think a judge would say this won't work? I'd say that, but I don't think that that is, in essence, the same attack on the judicial process that you have here. I'm not sure. Why is the judicial process worthy of more protection, we weak petunias or whatever you want to call us, than, let's say, the IRS and the federal government in collecting their tax monies? The way I read the case is it's different than just saying, I don't like you, Justice Sykes. That's different than, this is how you circumvent the process. It's a different... Here's how you circumvent the IRS. Here's some forms that I've used. I encourage you to use these. Put it in. In fact, I think we've seen some of this kind of stuff from the street fringe where they say, you know, I'm just a sovereign citizen. I don't have to pay taxes. Now, if they don't pay taxes, that's one thing. But I'm talking about the advocacy and social media to others and providing examples and advice on how to violate the law. You're telling me that if it's a Supreme Court of Illinois rule against recording, by God, we're going to stop it. But apparently, if it's merely a felony under federal law, it's okay. No, I'm saying that sometimes in the federal law, depending upon how you do it and what you say, you may be subject to prosecution. And if you incite people to criminal activity, someone's going to draw a line somewhere and make a determination as to whether or not you cross that line. Can you imagine in my income tax hypothetical anything he could say on Facebook that would subject him legitimately to federal prosecution? Possibly if you put out the forms like you mentioned and that this is how you do it and you should stop paying your taxes and you incite people to not pay taxes, you may possibly open yourself up to that. And I apologize, I gave up federal criminal practice 35 years ago, so I defer to you on that. But I think what the key here is that this person not only said, this is what you do, he said, I don't care if it causes problems in the court. And that's the determining factor. Are we, in fact, going to tell our courts that they have no ability to make sure that their judicial process is not impeded, not obstructed, or that the administration of justice can be interfered with? We have all the power in the world to do that in our courtrooms. You do, Your Honor. But I'm talking about the guy when he's sitting at home in his pajamas in his basement on Facebook, the courts have to be concerned about what he's going to say? If he has, in fact, incited people to do that, yes. And I believe that the court has the ability to say, you take corrective action, as in any action of contempt. Does it make any difference if he's a litigant? I would think as a litigant he subjects himself to the court and the court's corrections. So if this guy's case was over and it wasn't a matrimonial case, or it's done because child support's over or whatever, and there's no longer an issue, can he say the things that he said here but not be fearful of contempt because he's not a litigant, he's not before the courts? I haven't thought about that before. I haven't either. I give you my opinion that I think whenever you incite someone to interfere with a court process, you put yourself in the position of having a court come to you and say, you need to stop that type of activity. I don't know as if there will be a format to do that unless you are a litigant in a proceeding, unless there's some mechanism that you could bring someone forward in possibly some type of criminal situation like Justice Steigman talked about. But I don't know how you would get before the court unless the court were to bring some type of civil proceeding against you. You cite the Goss case, but the portion of the Goss case also says this, comment on pending cases, even if it is unfair and inaccurate, is not to be a judge contemptuous unless it constitutes an imminent peril to the administration of justice. Social interest in the integrity and competence of the judicial process requires that courts and judges should not be shielded from wholesome exposure to public view, and if this interest is to be well served, then some latitude must be allowed for inaccurate and intemperament comment. The court then says, but where the comment is systematically designed to serve the contrary aim of thwarting the judicial process, then, as the Supreme Court has acknowledged, such comment is not constitutionally protected. It seems to me that's a rather high bar. It's systematically designed to thwart the judicial process. Which is what this is designed to do. Well, first of all, would the judicial process be thwarted if someone were sitting in this courtroom recording this argument? I don't think so, Mr. Scott. I mean, we have a rule against it, but with thwarting the judicial process? Well, I think what it does is it puts a court in a situation to where they are placed in an inability to properly administer justice if someone is breaking Supreme Court rules. Well, we can do it, see, in our courthouses and our courtrooms, checking at the front door and the narrowly tailored steps so as not to interfere with First Amendment values. I think, yes, and that's the DeWitt County Courthouse, if the justice has been there, has a process almost exactly like you outlined. Well, that's the Champaign County one too, but... But, I mean, at any rate, this is correcting a misinformation that was placed on Facebook, which is different than correcting in the future forward as to different methodologies. Judge Narduli would not be able to issue a statewide order that would require each and every county to institute a system similar to what the court is suggesting. Well, we don't need to do that. We can figure out, we individual judges can figure it out for ourselves what steps we need to take to protect ourselves from such vicissitudes as Facebook criticisms. But this isn't criticism of Judge Narduli. This is basically an instruction book on how to avoid the rules. That's a different situation. It's not like saying, I've got a thin-skinned judge. How about a guy who gets on Facebook and says, you know, you prospective jurors have the right to engage in jury nullification, and if you find a defendant not guilty, and you can do it for any reason you want, that's not appealable, and if you don't think the state's attorney is bringing charges appropriately or charging too many black folks, and we ought to stop doing that. Maybe if you started acquitting some of these cases, they'd prosecute fewer. Is that permissible? I don't believe so. Really? I mean, he's going to be driving in front of Judge Narduli and also told you better get that off your Facebook page and apologize or say whatever it was Narduli says. I don't know if he's involved in that case. No, he's sitting in his pajamas in his basement on Facebook. How about that? I would say probably not. Thank you. Ms. Butler? Your Honors, I would only point out that Rule 63 is a limitation on judges' actions, and then if you have any other questions for me. We do not. Thank you. We'll take this matter under advisement and recess.